## Ed. Huffman v. The State.

### No. 2676.   Decided May 11, 1904.

**1.—Rape—Fraud.**

In order to justify a conviction of rape by fraud, the accused should have used some trick, device or stratagem to induce the party injured to believe that he was her husband.

**2.—Same—Insufficiency of Evidence.**

See evidence in opinion held to be insufficient to support a conviction for rape by fraud.

Appeal from the District Court of Comanche. Tried below before Hon. J. M. Presler, special judge.

Appeal from a conviction of rape by fraud; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Graham,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for rape by fraud, the penalty assessed being five years confinement in the penitentiary. On July 4, 1903, there was a picnic in Comanche, which defendant and his wife Florence and Andrew Huffman and his wife Fannie attended. These Huffmans and their wives spent the night with the Frazier family. Andrew Huffman and appellant are cousins, and they and their families had known each other intimately a long time. Appellant had three children, and Andrew one child. After supper Andrew and appellant went to town. When those at the Frazier residence retired for the night, beds in the east room were prepared in the same room for Andrew, his wife and baby; and appellant, his wife and three children. Appellant's wife and one child were placed on a bed, which was in the room, and their children were put to sleep on a pallet. Prosecutrix (Fannie) and her husband (Andrew) were to sleep on a mattress on the floor. These ladies retired, as did the Frazier family, while Andrew and appellant were out in town. About midnight appellant re-

turned from town, after everybody had retired. Quilla Frazier testified that he and his wife slept on the gallery on the south side of the room, and that they had already been asleep when defendant came in. This witness further testified: "I heard him come in through the door in the east room. At the time I thought Ed Huffman and Andrew Huffman were together, and I began to tell them where to sleep. I said, 'Ed, you will sleep on the bedstead there by the window with Florence, your wife, where she is sleeping,' and 'Andrew, you sleep on the mattress made down on the floor where your wife Fannie is sleeping.' I did not at that time know Ed Huffman was alone, but thought he and Andrew had come home to go to bed, and that is the reason I told both of them where to sleep. Defendant asked for a drink of water, and I told him his wife had carried the bucket of water into the room there where she and the children were sleeping so as to give the children water through the night. He was in this same room when talking to me. When he first came in he made some noise which awakened me. He seemed to talk in his natural tone and I did not notice that he spoke like he had been drinking or there was anything unusual in his voice. I did not hear his wife speak to him at all. There was quiet some little time in the room and I supposed defendant had gone to bed. The moon was shining bright that night and shone right in on his wife's bed so that he could see her plainly. In a little while after defendant had ceased talking to me, I heard Mrs. Fannie Huffman began to scream, cry and abuse defendant Ed Huffman, and heard sounds as if she was fighting or striking him. I then got up. Mrs. Fannie Huffman said to defendant, 'You old devil you, you thought you would come in here and ruin me while my husband was gone. You tried to deceive me;' and such language; and all this time crying and fighting at defendant. She was greatly excited and wrought up. She said, 'I am going to hunt my husband and have him to whip you. I am going to tell him what you have done.' She said then and there that she heard me tell Ed Huffman where to sleep and Andrew where to sleep; and she thought that Andrew was with Ed, and thought it was Andrew, her husband, getting in bed with her, and thought Ed Huffman, defendant, was getting in bed with his wife, on the bed by the window." Prosecutrix, Fannie Huffman, testified that she was the wife of Andrew, and had never been the wife of defendant Ed Huffman. After detailing their visit to Comanche on July 4th, and some other facts and circumstances which are not necessary here to repeat, she says that after supper her husband went up town; that her baby was nursing at the time, "and I had the care of her that day and was fatigued greatly and very sleepy, and retired early, and soon went sound asleep. Florence also retired at the same time I did, and in the same room. She and her baby slept on the bedstead by the window in the southwest corner of the same room. The two children of Florence slept on the pallet. Neither of the husbands were there when the ladies retired. About midnight, I suppose, I was aroused by someone coming in the house. I was awakened enough to hear Quilla

Frazier, who slept south of the room in which we were sleeping, tell them where to sleep. I supposed that both Andrew and Ed had come in to go to bed. I heard Quilla say, 'Ed, you will sleep with Florence who is on the bedstead by the window,' and 'Andrew, you will sleep with Fannie, who is on the bed made down on the floor near the door.' From what Quilla had said directing both Ed and Andrew where to sleep, I thought both were together and that Andrew would shortly get in the bed with me. Not suspecting anything wrong and being very tired and sleepy I dozed off again, and in a few minutes I was again aroused by some one whom I thought to be my husband getting in the bed with me. At the time my face was towards the wall and my baby was lying on my left arm nursing, and my back was toward the person whom I thought was my husband as he got in the bed with me. He was raising the cover and getting in the bed with me was what aroused me again. As soon as he lay down on the bed, he whispered in my ear and said, 'Turn over, Fannie.' His calling me by my given name still caused me to think it was my husband. I started to turn over to him and while doing so I said, 'Andrew, did you get that meat, kerosene and snuff?' and he answered, 'No, I thought I would wait until tomorrow.' I had told Andrew as he went to town that evening to get some meat, kerosene and snuff. This was why I asked him if he had gotten it. When he said, 'No, I thought I would wait until tomorrow,' I was still confirmed in my belief that I was talking to my husband who was there in the bed with me. Before I had turned over good, defendant, whom I thought to be my husband, raised one of my legs up, put his leg in between mine, and put his male organ into my female organ from behind. He had just gotten it fairly in, when I heard his wife, Florence, say, 'Ed, what makes you treat me this way?' I thought then that Ed was in the bed with her and she was talking to him about being out so late. When she said this, however, defendant, whom I still thought was my husband, took his male organ out of my female organ, and lay over on his back perfectly still a moment. I still thought it was my husband there with me, and thought that he had withdrawn his male organ from my female organ on finding that Florence and Ed were awake by their talking, and that he did not want Ed and Florence to discover him in the act of intercourse with me. Again Florence said, 'Ed, what makes you treat me this way?' Defendant began to get up and I discovered that it was Ed Huffman, defendant, and not my husband. This discovery greatly excited and angered me, and I sprang at him and beat him and abused him in every way I could. I acted on impulse, and was so excited and wrought up I can hardly tell all I did say or do. Ed said that he had made a mistake and got in the wrong bed. His wife said, 'No, you didn't; you have lived with me too long not to know the difference between me and Fannie.' She also said, 'Ed, you know Fannie never did give you any cause to do her that way.' He said, 'She never had.' She said 'that you (meaning defendant) knew that I never did sleep in my bare arms.' I always slept in my bare arms, but Florence

(defendant's wife) did not sleep in her bare arms. She further said there to him and me, that when Ed came in that night she did not speak to him because she was mad at him for staying out late. She said that after Quilla told him where to sleep and that his bed was on the bedstead by the window and mine on the floor, he sat down on the foot of the bed on which she was sleeping and pulled off his clothes; that after he got his clothes off he sat there a minute and would look first at her and then down at the bed on which I was sleeping; that she was lying there like she was asleep; that he then got on the bed with me and got under the cover and then she heard some whispering, and she called 'Ed.' She said to him, 'You thought I was asleep and Fannie was asleep, and that you would take advantage of her and ruin her while her husband was away.' She said further that she would not live with any man who would do that way. I told defendant I would go and find my husband and have him to whip him. He said he would explain it to him himself." The husband of prosecutrix testified as to the condition of things about the room, and that he returned after the trouble, and when he did return his wife told him what defendant had done; in fact, she stated to him practically what she testified.

Mrs. Carter testified that prosecutrix had a conversation with her in regard to this matter, and said: "I just want to tell you how it was. Ed came and got in bed with me.' I said, Why, Fannie, it looks like Ed has got sense enough to know that he would be caught up with." Fannie replied "that he was too drunk to know what he was doing; that we have got him where we want him; we'll show him how to get drunk and get in bed with another man's wife."

The wife of defendant was called as a witness in his behalf, and she testified practically as detailed by witness Fannie Huffman, as to the matters up to the time that her husband got in bed with prosecutrix. She testified further, "Ed asked for some water, and Quilla told him it was there in the room. He got a drink of water and sat down on and leaned against the foot of my bed, and pulled off his clothes. The moon was shining ·in at the window where I was. He then disappeared from my sight and I raised up and saw him in Fannie's bed with the cover partly over him. I had not spoken to him up to this time. I was mad at him. I heard Fannie whispering to him, and then I raised up and said, 'Ed, what do you mean by doing me this way?' I repeated the question and he rose up out of the bed, and as he did so Fannie rose too, shrieking and crying and fighting Ed. She cursed and abused and fought him for a long time. She said, 'You old devil you, you tried to ruin me here when you knew my husband was gone.' She said he did not go through with the act but started to. She said he called her 'Fannie,' and told her to turn over; and said that he said he had not gotten the meat, kerosene and snuff, but he would do so to-morrow; and that with what Quilla had said about where Ed and Andrew would sleep caused her to think it was her husband. Defendant was drunk. He did not have time from the time he got in Fannie's bed until he got out

to have intercourse with her or to penetrate her. Yes, I heard some whispering, but I could not tell what was said. Defendant said he made a mistake. I said, 'No, you have lived with me too long not to know me from Fannie.' Fannie said then that I had just called Ed in time to save her. He was not on Fannie. The cover was partially over him and her. Fannie was sleeping with her face to the wall, but when Ed got in bed with her she turned over and put her arms around his neck, and was in this position when I called Ed."

Defendant testified in his own behalf, and said that he was drunk and it was a mistake. There was some evidence tending to show that appellant was in an intoxicated condition. Andrew Huffman further testified, that he went by a wagon with a stranger and stopped a moment; that the stranger was carrying supper to a woman in the wagon; that he did not know her name, and did not know her name was Callie Suggs. Appellant offered to prove that Andrew Huffman (husband of prosecutrix) was with one Callie Suggs a short distance from Frazier's house, where the Huffmans were staying and where prosecutrix was sleeping. He proposed to show that Callie Suggs was a notorious prostitute and was intimate with prosecutrix; and that Andrew Huffman was alone in the dark on the creek with Callie Suggs, and about 100 yards from where his wife (prosecutrix) was then sleeping. This was offered for the purpose of impeaching the credibility of Andrew Huffman and prosecutrix, and to show the character of these witnesses. This was excluded. Under the view we take of the testimony it is not necessary to discuss this as well as other bills of exception. We do not believe this testimony justifies the conviction of rape by fraud. In order to justify such conviction, appellant should have used some trick, device or stratagem to induce the prosecutrix to believe that he was her husband. As we understand the testimony there was no trick, nor artifice, nor stratagem employed. Prosecutrix had known appellant a long time; her husband and appellant were cousins. They seemed to call each other by their given names; and there is nothing in the record to indicate a similarity in personal appearance between her husband and appellant, except the fact that they were related by consanguinity. She testifies that she thought this was her husband getting in bed with her; that appellant and her husband had come in the room together, and she thought she heard appellant getting in the bed with his wife. She does not even testify to the similarity of the voices of the two men. The moon was shining brightly, and all the circumstances tend to place her in the attitude where she knew or ought to have known that appellant was not her husband. These circumstances exclude rather than prove appellant used any artifice or trick or stratagem upon her to induce her to believe that he was her husband. The evidence, in our judgment, does not authorize the conviction for rape by fraud. The judgment is reversed and the cause remanded.

*Reversed and remanded.*